UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                          Case No. 3:07-bk-04295-JAF

NETBANK, INC.,                                  Chapter 11

       Debtor.

_____ /

CLIFFORD ZUCKER, in his capacity
as LIQUIDATING SUPERVISOR
for NETBANK, INC.,                              Adversary Proceeding No. _____

       Plaintiff,

v.

DWIGHT GALLOWAY,

       Defendant.

_____ /

**COMPLAINT UNDER SECTIONS 547,
548, 550, AND 551 OF THE BANKRUPTCY
CODE TO AVOID, RECOVER, AND PRESERVE
PREFERENTIAL TRANSFER OR FRAUDULENT TRANSFER**

Clifford Zucker, as plaintiff and in his capacity as liquidating supervisor (hereinafter,

"Plaintiff" or "Liquidating Supervisor") for NetBank, Inc. (the "Debtor"), files this

Complaint Under Sections 547, 548, 550, and 551 of the Bankruptcy Code to Avoid,

Recover, and Preserve Preferential Transfer or Fraudulent Transfer (the "Complaint") against

Dwight Galloway (the "Defendant"), and states as follows:

**Bankruptcy Filing and Case Background**

    1.    On September 28, 2007 (the "Petition Date"), the Debtor filed a voluntary

petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code")

in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville

Division (the "Bankruptcy Court").

2.      On September 16, 2008, the Bankruptcy Court entered an order confirming a

plan of liquidation (the "Plan") for the Debtor.

3.      Pursuant to the Plan, on the "Effective Date" (as defined therein)[1], Mr. Clifford

Zucker of J.H. Cohn LLP was appointed as the Liquidating Supervisor.

4.      As the Liquidating Supervisor, Mr. Zucker is the representative of the Debtor

and its estate in connection with the Debtor's Chapter 11 case.

5.      In that capacity, the Liquidating Supervisor has the right and responsibility to

review and analyze claims against the Debtor in its bankruptcy case and to file objections

thereto as he deems appropriate.  See sections 6.3 and 6.5 of the Plan.

6.      Furthermore, the Liquidating Supervisor is authorized by the Plan to pursue

certain causes of action for the benefit of the Debtor's estate, including actions seeking to

avoid and recover avoidable transfers made by or on behalf of the Debtor.  See sections 6.3

and 6.5 of the Plan.

7.      Prior to the Petition Date, the Debtor entered into that certain Irrevocable Trust

Agreement For Use With Nonqualified Deferred Compensation Program Sponsored by

Invesco Retirement, Inc. by and between NetBank and Amvescap National Trust Company

dated January 15, 2003 (the "Trust Agreement").  A true and correct copy of the Trust

Agreement is attached hereto and incorporated herein by reference as Exhibit "A."

8.      In connection with the Trust Agreement, the Debtor issued the NetBank, Inc.

Nonqualified Deferred Compensation Plan, Summary Plan Description dated July 2003 (the

---

[1] The Effective Date of the Plan was September 29, 2008.

US2008 869517.2

"Plan Description").  A true and correct copy of the Plan Description is attached hereto and incorporated herein by reference as Exhibit "B."

9.      In connection with the Trust Agreement, the Debtor issued the Nonqualified Deferred Compensation Program Including §401(k) Transfer Basic Program Document (the "Basic Program Document").  A true and correct copy of the Basic Program Document is attached hereto and incorporated herein by reference as Exhibit "C."

10.      In connection with the Trust Agreement, the Debtor executed the Nonqualified Deferred Compensation Program Including §401(k) Transfer Adoption Agreement (the "Adoption Agreement").  A true and correct copy of the Adoption Agreement is attached hereto and incorporated herein by reference as Exhibit "D."  The Trust Agreement, Plan Description, Basic Program Document, and Adoption Agreement are collectively referred to herein as the "Deferred Compensation Program."

11.      Pursuant to section 1(d) of the Trust Agreement, "[a]ny assets held by the Trust [were] subject to the claims of the [Debtor's] general creditors under federal and state law in the event of insolvency . . . ."

12.      Paragraph 1.23 of Article I of the Basic Program Document provides, in part, as follows:

> Any assets held under the terms of the Trust shall be the exclusive property of the [Debtor] and shall be subject to creditor claims of the [Debtor].  Participants shall have no right secured or unsecured to any assets held under the terms of the Trust.

13.      Page 4 of the Plan Description provides, in part, in bold type, as follows:

> **Please note that the NQDCP is an unfunded plan. NetBank is making an unsecured promise to pay benefits under the Program. You will be a general creditor of the Employer to the extent of your account balance.**

14.    Page 8 of the Plan Description provides, in part, as follows:

You and your beneficiary(ies) are an unsecured general creditor of the Company, NetBank, Inc., to the extent of the value of your account balance. You and your beneficiary(ies) have no ownership or other interest in any financial or other instrument, asset or arrangement that NetBank, Inc. may acquire or enter into should the [Debtor] elect to hedge its NQDCP obligations.

15.    Upon information and belief, at some point prior to August 2007, Merrill Lynch Bank & Trust Company, FSB ("Merrill Lynch"), as successor Trustee for the Deferred Compensation Program, refused to make distributions, believing that the Debtor was insolvent and therefore prohibited from making any transfers under the Deferred Compensation Program.

16.    On August 23, 2007, approximately one month prior to the Debtor's bankruptcy filing, Steven Herbert, Chief Executive Officer of the Debtor, wrote a letter to Merrill Lynch in which he alleged that the Debtor was not insolvent and instructed Merrill Lynch to make the transfers under the Deferred Compensation Program that it had heretofore been refusing to make.  In accordance with this instruction, the Transfer (as defined below) was made.  A true and correct copy of this August 23, 2007 letter is attached hereto and incorporated herein by reference as Exhibit "E."

17.    Defendant was a participant in the Debtor's Deferred Compensation Program.

## Jurisdiction and Venue

18.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

US2008 869517.2

19.     Defendant is subject to the jurisdiction of the Bankruptcy Court.  Defendant may be served with process in the manner prescribed by Federal Rule of Bankruptcy Procedure 7004(b).

## COUNT I

### PREFERENTIAL TRANSFER AVOIDABLE
### UNDER SECTION 547(b) OF THE BANKRUPTCY CODE

20.     The Liquidating Supervisor repeats and realleges the allegations contained in paragraphs 1 through 19 as if fully set forth herein.

21.     On or within ninety (90) days prior to the Petition Date, the Debtor made or caused to be made a transfer to or for the benefit of the Defendant of cash or other property of the Debtor in the amount of $144,232.66 (the "Transfer").

22.     The underlying basis for the Transfer was a distribution to the Defendant pursuant to the Deferred Compensation Program.

23.     At the time the Transfer was made, the Defendant was a creditor of the Debtor, as that term is defined under the Bankruptcy Code, because of the Debtor's outstanding obligations to the Defendant pursuant to the Deferred Compensation Program and as otherwise may be applicable.

24.     The Transfer was a transfer of an interest of the Debtor in property.

25.     The Transfer was made to or for the benefit of the Defendant, a creditor of the Debtor.

26.     The Transfer was made for or on account of an antecedent debt owed by the Debtor to the Defendant before the Transfer was made.

27.     The Transfer was made while the Debtor was insolvent within the meaning of sections 547 and 101(32) of the Bankruptcy Code.

28.     The Transfer enabled the Defendant to receive more than he would have received if the Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, the Transfer had not been made, and the Defendant received payment of his debt to the extent provided by the provisions of the Bankruptcy Code.

29.     The Transfer constitutes an avoidable preferential transfer pursuant to the provisions of section 547(b) of the Bankruptcy Code.

**COUNT II**

**RECOVERY OF AVOIDED PREFERENTIAL TRANSFER
UNDER SECTION 550(a) OF THE BANKRUPTCY CODE AND
PRESERVATION OF AVOIDED PREFERENTIAL TRANSFER
<u>PURSUANT TO SECTION 551 OF THE BANKRUPTCY CODE</u>**

30.     The Liquidating Supervisor repeats and realleges the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31.     The Defendant was the initial transferee of the Transfer or the entity for whose benefit such Transfer was made; therefore, pursuant to the provisions of section 550(a) of the Bankruptcy Code, the Liquidating Supervisor is entitled to recover from the Defendant, for the benefit of the Debtor's estate, the property transferred or the value of the property transferred.

32.     Furthermore, the avoided Transfer is and shall be preserved for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code.

33.     By letter dated August 4, 2009, the Liquidating Supervisor, by and through counsel, made written demand to the Defendant for repayment of the Transfer; however, the

- 6 -

Defendant has refused to comply with such demand and has failed to repay the avoidable Transfer to the Liquidating Supervisor on behalf of the Debtor's estate.

34.     The Liquidating Supervisor is entitled to recover interest on the amount of the Transfer from and after the Defendant's receipt of demand for repayment of the avoidable Transfer.

**COUNT III**

**FRAUDULENT TRANSFER AVOIDABLE
UNDER SECTION 548(a)(1)(B) OF THE BANKRUPTCY CODE**

35.     The Liquidating Supervisor repeats and realleges the allegations contained in paragraphs 1 through 34 as if fully set forth herein.

36.     If and to the extent that the Transfer was not on account of an antecedent debt, the Debtor did not receive reasonably equivalent value in exchange for such Transfer (the "Potentially Fraudulent Transfer").

37.     The Debtor was insolvent on the date the Potentially Fraudulent Transfer was made or became insolvent as a result of the Potentially Fraudulent Transfer.

38.     At the time of the Potentially Fraudulent Transfer, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital.

39.     At the time of the Potentially Fraudulent Transfer, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond its ability to pay as such debts matured.

40.     The Potentially Fraudulent Transfer was made within two (2) years prior to the Petition Date.

US2008 869517.2

41.     The Potentially Fraudulent Transfer constitutes an avoidable fraudulent transfer pursuant to the provisions of section 548(a)(1)(B) of the Bankruptcy Code.

### COUNT IV

**RECOVERY OF AVOIDED FRAUDULENT TRANSFER
UNDER SECTION 550(a) OF THE BANKRUPTCY CODE AND
PRESERVATION OF AVOIDED FRAUDULENT TRANSFER
PURSUANT TO SECTION 551 OF THE BANKRUPTCY CODE**

42.     The Liquidating Supervisor repeats and realleges the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43.     The Defendant was the initial transferee of the Transfer or the entity for whose benefit such Transfer was made; therefore, pursuant to the provisions of section 550(a) of the Bankruptcy Code, the Liquidating Supervisor is entitled to recover from the Defendant, for the benefit of the Debtor's estate, the property transferred or the value of the property transferred.

44.     Furthermore, the avoided Transfer is and shall be preserved for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code.

45.     The Liquidating Supervisor is entitled to recover interest on the amount of the Transfer from and after the Defendant's receipt of demand for repayment of the avoidable Transfer.

### COUNT V

**DISALLOWANCE OF CLAIMS UNDER
SECTION 502(d) OF THE BANKRUPTCY CODE**

46.     The Liquidating Supervisor repeats and realleges the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47.     As set forth in Count I above, the Transfer that was made to or on behalf of the Defendant is avoidable under section 547 of the Bankruptcy Code, or alternatively, as set

- 8 -

forth in Count III above, the Transfer is avoidable under section 548 of the Bankruptcy Code. As set forth in Counts II and IV above, property is recoverable from the Defendant pursuant to section 550 of the Bankruptcy Code.

48.    Because the Defendant is a party from whom property is avoidable under either section 547 or section 548 of the Bankruptcy Code and recoverable under section 550 of the Bankruptcy Code, and the Defendant has not repaid to the Liquidating Supervisor, on behalf of the Debtor's estate, the amount of the Transfer for which he is liable, any claims of the Defendant in the Debtor's bankruptcy case must be disallowed pursuant to section 502(d) of the Bankruptcy Code.

WHEREFORE, the Liquidating Supervisor prays for entry of judgment in his favor and against Defendant Dwight Galloway on the Liquidating Supervisor's Complaint as follows:

(1)    avoiding as a preference the Transfer made or caused to be made by the Debtor to or for the benefit of the Defendant in the sum of $144,232.66, pursuant to section 547(b) of the Bankruptcy Code;

(2)    alternatively, if and to the extent the Transfer is not avoided as a preference, avoiding as fraudulent the Transfer (i.e., the Potentially Fraudulent Transfer) made or caused to be made by the Debtor to or for the benefit of the Defendant in the sum of $144,232.66, pursuant to section 548(a)(1)(B) of the Bankruptcy Code;

(3)    holding that the Liquidating Supervisor is entitled to recover from the Defendant pursuant to section 550(a) of the Bankruptcy Code, for the benefit of the Debtor's estate, the total amount of the Transfer in the sum of $144,232.66, plus interest from the date of demand for return of the Transfer;

US2008 869517.2

(4)     determining that the Transfer, once it is avoided, shall be preserved for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code;

(5)     disallowing any and all claims of the Defendant in the Debtor's bankruptcy case pursuant to section 502(d) of the Bankruptcy Code unless and until the Defendant disgorges the avoidable Transfer; and

(6)     granting such other and further relief as is necessary and appropriate.

Dated: August 28, 2009


                              KILPATRICK STOCKTON LLP


                              By:   /s/ Michael D. Langford
1100 Peachtree Street              Todd C. Meyers
Suite 2800                         Georgia Bar No. 503756
Atlanta, GA  30309-4530            Michael D. Langford
(404) 815-6500                     Georgia Bar No. 436220
                                   Shane G. Ramsey
                                   Florida Bar No. 026842
                                   (404) 815-6500 (Telephone)
                                   (404) 815-6555 (Facsimile)
                                   mlangford@kilpatrickstockton.com

                                   AND

                                   Betsy C. Cox
                                   Florida Bar No. 307033
                                   ROGERS TOWERS, P.A.
                                   1301 Riverplace Blvd., Ste. 1500
                                   Jacksonville, FL 32207
                                   (904) 398-3911 (Telephone)
                                   (904) 396-0663 (Facsimile)
                                   bcox@rtlaw.com

                                   Counsel for Plaintiff Clifford Zucker, in
                                   his capacity as the Liquidating Supervisor
                                   for NetBank, Inc.

US2008 869517.2

# EXHIBIT A

## IRREVOCABLE TRUST AGREEMENT

### For Use With

### NONQUALIFIED DEFERRED COMPENSATION PROGRAM

### SPONSORED BY

### INVESCO Retirement, Inc.

THIS AGREEMENT MADE THIS 15th DAY OF JANUARY, 2003, BY AND BETWEEN NETBANK, INC. (COMPANY) AND AMVESCAP NATIONAL TRUST COMPANY (TRUSTEE).

WHEREAS, Company has adopted a Nonqualified Deferred Compensation Program for a select group of management or highly compensated Employees; and

WHEREAS, Company has incurred or expects to incur liability under the terms of such Program with respect to the individuals participating in such Program; and

WHEREAS, Company wishes to establish a trust (hereinafter called "Trust") and to contribute to the Trust assets that shall be held therein, subject to the claims of Company's creditors in the event of Company's Insolvency, as herein defined, until paid to Participants and their Beneficiaries in such manner and at such times as specified in the Program; and

WHEREAS, it is the intention of the parties that this Trust shall constitute an unfunded arrangement and shall not affect the status of the Program as unfunded arrangements maintained for the purpose of providing deferred compensation for a select group of management or highly compensated employees for purposes of Title I of the Employee Retirement Income Security Act of 1974; and

WHEREAS, it is the intention of Company to make contributions to the Trust to provide itself with a source of funds to assist it in the meeting of its liabilities under the Program;

NOW THEREFORE, the parties do hereby establish the Trust and agree that the Trust shall be comprised, held and disposed of as follows:

### Section 1.    Establishment of Trust

(a)    *Contributions* Company hereby deposits with Trustee in trust $_____, which shall become the principal of the Trust to be held, administered and disposed of by the Trustee as provided in this Trust Agreement.

(b)    *Irrevocable* The Trust hereby established shall be irrevocable.

(c)    *Grantor* The Trust is intended to be a grantor trust, of which the Company is the grantor, within the meaning of subpart E, part I, subchapter J, Chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended, and shall be construed accordingly.

1

(d) **Restricted Assets** The principal of the Trust, and any earnings thereon shall be held separate and apart from other funds of the Company and shall be used exclusively for the uses and purposes of Participants and general creditors as herein set forth. Participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Program and this Trust Agreement shall be mere unsecured contractual rights of Participants and their Beneficiaries against the Company. Any assets held by the Trust will be subject to the claims of the Company's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a) herein.

(e) **Additional Contributions** The Company, in its sole discretion, may at any time, or from time to time, make additional deposits of cash or other property in Trust with Trustee to augment the principal to be held, administered and disposed of by Trustee as provided in this Trust Agreement. Neither Trustee nor any Participant or Beneficiary shall have any right to compel such additional deposits.

(f) **Required Contributions** Upon a change of control the Company shall, as soon as possible, but in no event longer than 30 days following the change of control, as defined herein, make an irrevocable contribution to the Trust in an amount that is sufficient to pay each Participant or Beneficiary the benefits to which such Participant(s) or their Beneficiaries would be entitled pursuant to the terms of the Program as of date on which the change of control occurred.

Section 2.    Payment To Plan Participants and Beneficiaries

(a) **Determination of Benefits** The Company shall deliver to the Trustee a schedule (the "Payment Schedule") that indicates the amounts payable in respect of each Participant (and his or her beneficiaries), that provides a formula or other instructions acceptable to the Trustee for determining the amounts so payable, the form in which such amount is to be paid [as provided for or available under the Program], and the time of commencement for payment of such amounts. The Trustee shall make payments to Participants and their Beneficiaries in accordance with such Payment Schedule through the Company. The Company shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Program and shall pay amounts withheld to the appropriate taxing authorities.

(b) **Benefit Claims** Prior to a change of control as defined at Section 13(d), the entitlement of a Participant or his or her Beneficiaries to benefits under the Program shall be determined by the Company or such party as it shall designate under the Program, and any claim for such benefits shall be considered and reviewed under the procedures set out in the Program. After a change of control as defined at Section 13(d), the entitlement of a Participant or his or her Beneficiaries to benefits under the Program shall be determined by the Trustee.

(c) **Payment of Benefits** The Company may make payment of benefits directly to Participants or their Beneficiaries as they become due under the terms of the Program. The Company shall notify the Trustee of its decision to make payment of benefits directly prior to the time amounts

2

are payable to Participants or their Beneficiaries. In addition, if the principal of the Trust, and any earnings thereon, are not sufficient to make payments of benefits in accordance with the terms of the Program, the Company shall provide the balance of each such payment as it falls due. The Trustee shall notify the Company when principal and earnings are not sufficient.

**Section 3.**      **Trustee Responsibility Regarding Payments to Trust Beneficiary When Company is Insolvent**

(a)      *Insolvency* The Trustee shall cease payment of benefits to Participants and their Beneficiaries if the Company is insolvent. The Company shall be considered "insolvent" for purposes of this Trust Agreement if (i) the Company is unable to pay its debts as they become due, or (ii) the Company is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

(b)      *Creditor Claims* At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of the Company under federal and state law as set forth below:

     (1)      The Board of Directors and/or the highest ranking official of the Company shall have the duty to inform the Trustee in writing of the Company's insolvency. If a person claiming to be a creditor of the Company alleges in writing to the Trustee that the Company has become insolvent, the Trustee shall determine whether the Company is insolvent and, pending such determination, the Trustee shall discontinue payment of benefits to Participants or their beneficiaries.

     (2)      Unless the Trustee has actual knowledge of the Company's insolvency, or has received notice from the Company or a person claiming to be a creditor alleging that the Company is insolvent, the Trustee shall have no duty to inquire whether the Company is insolvent. The Trustee may in all events rely on such evidence concerning the Company's solvency as may be furnished to the Trustee and that provides the Trustee with a reasonable basis for making a determination concerning the Company's solvency.

     (3)      If at any time the Trustee has determined that the Company is insolvent, the Trustee shall discontinue payments to Participants or their Beneficiaries and shall hold the assets of the Trust for the benefit of the Company's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Participants or their Beneficiaries to pursue their rights as general creditors of the Company with respect to benefits due under the Program or otherwise.

     (4)      Trustee shall resume the payment of benefits to Participants or their Beneficiaries in accordance with Section 2 of this Trust Agreement only after the Trustee

3

has determined that the Company is not insolvent (or is no longer insolvent).

(c)     *Resumption of Payments* Provided that there are sufficient assets, if the Trustee discontinues the payment of benefits from the Trust pursuant to Section 3(b) hereof and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to Participants or their Beneficiaries under the terms of the Program for the period of such discontinuance, less the aggregate amount of any payments made to Participants or their Beneficiaries by the Company in lieu of the payments provided for hereunder during any such period of discontinuance.

### Section 4.    Payments To The Company

Except as provided in Section 3 hereof, after the Trust has become irrevocable, the Company shall have no right or power to direct the Trustee to return to the Company or to divert to others any of the Trust assets before all payment of benefits have been made to Participants and their Beneficiaries pursuant to the terms of the Program.

### Section 5.    Investments

(a)     *Investment Authority* The Trustee shall hold and invest the assets of the Trust pursuant to the direction of the Administrator named by the Company. The Administrator and the Trustee shall adopt mutually acceptable procedures pertaining to the issuance and implementation of investment directions that shall be given from time to time by the Administrator to the Trustee. Notwithstanding the foregoing, upon a Change of Control, the Trustee shall have full responsibility with respect to the administration of Participant investment preferences.

(b)     *Investment Alternatives* The Trustee shall invest the Trust in any form of property, including common and preferred stocks, exchange traded put and call options, bonds, money market instruments, mutual funds (including funds for which the Sponsor or the Trustee or an affiliate of the Sponsor or the Trustee serve as investment advisor), savings accounts, certificates of deposit, investment contracts, Treasury bills, insurance contracts (including contracts issued by the Sponsor or an affiliate of the Sponsor), or in any other property, real or personal, having a ready market. The Trustee may invest in time deposits (including, if applicable, its own or those of affiliates) which bear a reasonable interest rate. In no event may the Trustee directly or indirectly lend Trust assets to the Company or invest in securities (including stock or rights to acquire stock) or obligations issued by the Company, other than a de minimis amount held in common investment vehicles in which the Trustee invests.

(c)     *Ownership Rights* All rights associated with assets of the Trust shall be exercised by the Trustee or the person designated by the Trustee, as directed by the Administrator, and shall in no event be exercised by or rest with Participants. Notwithstanding the foregoing, upon a Change of Control, all ownership rights associated with assets of the Trust shall be exercised by the Trustee.

4

(d)    *Indemnification* The Trustee shall be under no duty to question or make inquiries as to any action or direction given by the Administrator, or as to the failure of the Administrator to take action or to give directions.  The Trustee shall have no duty to review securities held subject to the investment direction of the Administrator, and the Trustee shall be fully protected and held harmless in implementing the investment directions given by the Administrator, unless in implementing such investment direction by the Administrator the Trustee has been negligent in its execution of the investment directions.

### Section 6.        Disposition of Income

During the term of this Trust, all income received by the Trust, net of expenses, fees and taxes, shall be accumulated and reinvested.

### Section 7.        Accounting by Trustee

The Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transactions required to be made, including such specific records as shall be agreed upon in writing between the Company and the Trustee.  Within 60 days following the close of each calendar year and within 90 days after the removal or resignation of the Trustee, the Trustee shall deliver to the Company a written account of its administration of the Trust during such year or during the period from the close of the last preceding year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such year or as of the date of such removal or resignation, as the case may be.

### Section 8.        Responsibility of Trustee

(a)    *Prudence* The Trustee shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, provided, however, that the Trustee shall incur no liability to any person for any action taken pursuant to a direction, request or approval given by the Company which is contemplated by, and in conformity with, the terms of the Program or this Trust and is given in writing by the Company.  In the event of a dispute between the Company and a party, the Trustee may apply to a court of competent jurisdiction to resolve the dispute.

(b)    *Litigation* If the Trustee undertakes or defends any litigation arising in connection with this Trust, the Company agrees to indemnify the Trustee against the Trustee's costs, expenses and liabilities (including, without limitation, attorney's fees and expenses) relating thereto and to be primarily liable for such payments, unless such costs, expenses and liabilities are a result of the Trustee's negligence or malfeasance. If the Company does not pay such costs, expenses and liabilities in a reasonably timely manner, the Trustee may obtain payment from the Trust.

5

(c)     *Legal Counsel* The Trustee may consult with legal counsel (who may also be counsel for the Company generally) with respect to any of its duties or obligations hereunder.

(d)     *Professionals* The Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist the Trustee in performing any of its duties or obligations hereunder.

(e)     *Powers* The Trustee shall have, without exclusion, all powers conferred on trustees by applicable law, unless expressly provided otherwise herein, provided, however, that if an insurance policy is held as an asset of the Trust, the Trustee shall have no power to name a Beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to e different form) other than to a successor Trustee, or to loan to any person the proceeds of any borrowing against such policy.

(f)     *Limitation on Powers* Notwithstanding any powers granted to the Trustee pursuant to this Trust Agreement or under applicable law, the Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of Section 301.7701-2 of the Procedure and Administrative Regulations promulgated under the Internal Revenue Code.

### Section 9.     Compensation and Expenses of Trustee

The Company shall pay all administrative and trustee's fees and expenses. If not so paid, the fees and expenses shall be paid from the Trust.

### Section 10.     Resignation and Removal of Trustee

(a)     *Resignation* The Trustee may resign at any time by written notice to the Company, which shall be effective 90 days  after receipt of such notice unless the Company and Trustee agree otherwise.

(b)     *Removal* The Trustee may be removed by the Company upon 30 days notice or upon shorter notice if acceptable to the Trustee.   Upon a change of control as defined at Section 13(d), the Trustee may not be removed by the Company for two years from the date on which the change of control is effective unless such removal is approved in writing by a majority of Program Participants.

(c)     *Transfer of Assets* Upon resignation or removal of the Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee.  The transfer shall be completed within 30 days after receipt of notice of resignation, removal or transfer, unless the Company extends the time limit.

(d)     *Successor Trustee* If the Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 11 hereof, by the effective date of resignation or removal under paragraphs (a) or (b) of this section. If no such appointment has been made, the Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of the Trustee in connection

6

with the proceeding shall be allowed as administrative expenses of the Trust.

### Section 11.        Appointment of Successor

(a)   *Procedure* If the Trustee resigns or is removed in accordance with Section 10(a) or (b) hereof, the Company shall appoint a national or state banking organization or trust company having capitalization in excess of $100 million or other party that may be granted corporate trustee powers under state law, as a successor to replace the Trustee upon resignation or removal. The appointment shall be effective when accepted in writing by the new Trustee, who shall have all of the rights and powers of the former Trustee, including ownership rights in the trust assets. The former Trustee shall execute any instrument necessary or reasonably requested by the Company or the successor Trustee to evidence the transfer.

(b)   *Successor Trustee* The successor Trustee need not examine the records and acts of any prior Trustee and may retain or dispose of existing trust assets, subject to Sections 7 and 8 hereof. The successor Trustee shall not be responsible for any claim or liability resulting from any action or inaction of any prior Trustee or from any other past event, or any condition existing at the time it becomes the successor Trustee.

### Section 12.        Amendment or Termination

(a)   *Amendment* This Trust Agreement may be amended by a written instrument executed by Trustee and the Company. Any amendment having an effective date within the two year period beginning on the Effective Date of the Program shall be subject to approval of all Participants. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Program or shall make the Trust revocable after it has become irrevocable in accordance with Section 1(b) hereof.

(b)   *Limitations on Termination* The Trust shall not terminate until the date on which Participants and their Beneficiaries are no longer entitled to benefits pursuant to the terms of the Program. Any assets remaining in the Trust after all benefits have been paid shall be returned to the Company and the Trust shall be terminated.

(c)   *Participant Approval* Upon written approval of Participants or Beneficiaries entitled to payment of benefits pursuant to the terms of the Program, the Company may terminate this Trust prior to the time all benefit payments under the Program have been made. All assets in the Trust at termination shall be returned to the Company.

### Section 13.        Miscellaneous

(a)   *Invalid Provisions* Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

7

(b) **_Assignment and Alienation_** Benefits payable to Participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(c) **_Applicable Law_** This Trust Agreement shall be governed by and construed in accordance with the laws of Georgia.

(d) **_Change of Control_** For purposes of this Trust "Change of Control" shall mean the purchase or other acquisition by any person, entity or group of persons, within the meaning of Section 13(d) or 14(d) of the Securities Exchange Act of 1934 ("Act"), (or any comparable successor provisions, of beneficial ownership within the meaning of Rule 13d-3 promulgated under the Act) of 30 percent or more of either the outstanding shares of common stock or the combined voting power of the Company's then outstanding voting securities entitled to vote generally, or the approval by the stockholders of the Company of a reorganization, merger, or consolidation, in each case, with respect to which persons who were stockholders of the Company immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than 50 percent of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated Company's then outstanding securities, or a liquidation or dissolution of the Company or of the sale of all or substantially all of the Company's assets.

## Section 14.   Effective Date

The effective date of this Trust Agreement shall be the 15th day of JANUARY, 2003 .

NETBANK, INC.:

Signed By: Thomas R. McCants, Jr
Title: Senior Officer-Director Compensation
& Benefit
Attest:

AMVESCAP NATIONAL TRUST COMPANY:

Signed By:
Title:

Attest:

# EXHIBIT B

NETBANK, INC.
NONQUALIFIED DEFERRED COMPENSATION PLAN

Summary Plan Description

July 2003

## CONTENTS

Plan Summary    4

Questions and Answers About the Deferred Compensation Program    6

Who is eligible to participate in the NQDCP?    6

What are the entry dates for participation?    6

How much can I defer into the NQDCP?    6

How do I enroll in the NQDCP?    6

When must I decide on the amount I want to defer?    7

What if I first become eligible during the year?    7

If I've met the eligibility requirements before
but elected not to participate, can I enter the NQDCP during the year?    7

Can I change the amount of my deferral during the year?    7

Does the Company make any contributions to the NQDCP?    7

Is there a vesting schedule for this program?    7

What are the distribution events under the NQDCP?    8

How will the benefits be paid?    8

Can I change my beneficiary?    8

Who is obligated to pay these benefits?    8

Do I pay Federal income taxes on money deferred during the Program year?    8

What determines the returns on my deferrals?    9

What are the Performance Options?    9

How frequently can I change my investment options?    9

How can I keep track of my investment performance options?    9

How do I apply for benefits?    9

Is there a Claims Procedure?                                                                9

Can this Program be terminated?                                                           10

May I review this Program with my lawyer, accountant or financial advisers?    10

## PLAN SUMMARY

### NetBank, Inc. NonQualified Deferred Compensation Program

**Program Objectives** NetBank, Inc. NonQualified Deferred Compensation Program ("NQDCP") became effective January 1, 2003 and has the following major objectives:

- NQDCP is designed to provide you with an opportunity to supplement your retirement income through deferral of pre-tax income.

- NQDCP allows you to measure the performance of your deferrals as if the amounts were invested in any of the performance options identified by the Plan Administrator.

**In General** The following pages describe the key features of the Program. If you wish additional detail, you should consult the NQDCP Program Document, which contains all the provisions of the NQDCP and governs any interpretation of the Program.

Participation in the NQDCP is entirely voluntary. You must decide by the end of the enrollment period prior to the beginning of the next Program (calendar) year the amount or percentage of your pre-tax compensation you elect to defer for the following year. You may elect to defer up to a specified percentage of your compensation after setting aside enough of your compensation to cover your costs under any flexible benefits (cafeteria) plan or other payroll costs.

Subsequent deferrals will also be made on a calendar year basis. You will have the opportunity to make your deferral elections in the last quarter of each year, which will affect income earned in the subsequent calendar year.

*Please note that the NQDCP is an unfunded plan. NetBank is making an unsecured promise to pay benefits under the Program. You will be a general creditor of the Employer to the extent of your account balance.*

**Investment Options** You can elect the performance options that will be used to value your NQDCP accounts from the list of investment performance options provided by the Plan Administrator. These amounts are not actually invested in these options. Instead, the chosen performance options are used to measure the gains and losses on the deferred amounts and your account will be valued based on returns of the performance options you select.

Deferrals will be allocated among the performance options according to the percentages you elect. You will have the opportunity to change the

allocation for future deferrals and to allocate current balances on a daily basis.

**Benefit Payments**    Account balance distributions will begin as designated on your Distribution Election form and will be paid subsequent to one of the following events:

- Retirement at age 55 with 7 years of service
- Your terminating employment with the Company
- Death

Payment will be in either of the following forms:

- Lump sum
- Annual installments over a 10-year period

Benefits will be paid through the NetBank, Inc. payroll system.

## QUESTIONS AND ANSWERS
### About the Deferred Compensation Program

*If you have questions that are not answered in these materials, you can call AMVESCAP Retirement Resources Group at 1-800-881-8520 Monday through Friday 9 a.m. to 5 p.m. ET. A Benefits Specialist will answer your call.*

### Who is eligible to participate in the NQDCP?

The Program Administrator has nominated the following classes of employees to be eligible to participate in the NQDCP:

- Group I: Senior officers or Senior Vice President and above
- Group II: All NetBank, Inc. associates whose annual income is $90,000 or higher.

### What are the entry dates for participation?

You can join the NQDCP as of the first day of the month following the date you satisfy the NQDCP's eligibility requirements. After the initial participation date, you can elect to participate during annual enrollment, which is during the last quarter of the year.

Participation is voluntary.

### How much can I defer into the NQDCP?

- Group I can defer up to 25% of total Compensation.
- Group II can defer up to 15% of total Compensation.

Compensation means the total annual remuneration for employment you receive from the Company and reported on your tax Form W-2. Compensation also includes amounts deferred under this Program, under a Cafeteria Plan as described at Code §125, under a 401(k) plan and any other Employer plan qualified under Code §401(a) sponsored by the Company. Compensation only includes remuneration earned while you are an Employee.

Bonus: You can also make a separate election to defer payment of the bonus for the following year. The election to defer bonus payments must be made at the same time as your elections to defer regular compensation.

### How do I enroll in the NQDCP?

When you are initially eligible, and for each succeeding year you continue to be eligible, the Program Administrator will provide you with the enrollment

materials to make the necessary elections. Your elections will take effect as soon as administratively feasible.

Deductions will be taken on a pre-tax, per pay period basis.

## When must I decide on the amount I want to defer?

Under U.S. tax law, you must decide to defer compensation before it is earned. Therefore, you must complete and submit a deferral election form prior to the period you earn the compensation. On an annual basis, this means you must make your deferral elections for both regular pay and for bonus before the beginning of the year you will earn the compensation.

## What if I first become eligible during the year?

You may initially participate in the NQDCP as of the entry date after you first become eligible.

## If I've met the eligibility requirements before but elected not to participate, can I enter the NQDCP during the year?

No, you will be able to participate during the next enrollment period.

## Can I change the amount of my deferral during the year?

You may stop deferrals during the year, but you may not change the amount during the year. If you wish to stop deferrals, the deduction will stop effective on the first day of the first payroll period in the next Program Year following the date you submit a written notice to the Program Administrator.

If you wish to change the amount of your deferrals, your must make your change during the annual enrollment period before the beginning of the next Program year. Your election will take effect on the first day of the first payroll period in the next Program Year.

## Does the Company make any contributions to the NQDCP?

The Company does not contribute to the NQDCP.

## Is there a vesting schedule for this Program?

Because all the contributions to the NQDCP are your deferrals, you are 100% vested in your account in the NQDCP.

## What are the distribution events under the NQDCP?

You may receive payment of your benefit under the NQDCP for the following circumstances:

- You retirement. Retirement means you have reached age 55 and have completed 7 years of service with the Company;
- You terminate employment with the Company;
- You die;
- The Company undergoes a Change in Control;
- The Company terminates the NQDCP.

Your benefit will be distributed to you or your beneficiary not more than 30 days following the date of any of the above events.

Note: The Company reserves the right to accelerate any or all payouts under the Program.

## How will the benefits be paid?

Benefits will be paid at your election in either of the following forms:

- Lump sum;
- Annual installment payments over a period of 10 years.

## Can I change my beneficiary?

You may change your beneficiary designation at any time by completing a new Designation of Beneficiary Form, which is available from the Program Administrator.

## Who is obligated to pay these benefits?

You and your beneficiary (ies) are an unsecured general creditor of the Company, NetBank, Inc., to the extent of the value of your account balance. You and your beneficiary(ies) have no ownership or other interest in any financial or other instrument, asset or arrangement that NetBank, Inc. may acquire or enter into should the Company elect to hedge its NQDCP obligations.

## Do I pay Federal income taxes on money deferred during the Program year?

No, the compensation you defer is exempt from Federal income taxes at the time of deferral. However, the deferral is subject to Social Security and Medicare taxes. The deferral and any earnings on the deferral are subject to Federal income tax in the year(s) in which you or your beneficiary(ies) receives them.

**What determines the returns on my deferrals?**

You can select from among the performance options made available by the Program Administrator that will be used to value your NQDCP account. However, these amounts will not actually be invested in these options. Instead, the chosen performance options are used to measure the gains and losses of the deferred amounts, and your account will be valued based on returns of the performance options you select. Your account is valued on a daily basis.

**What are the Performance Options?**

Generally, you will be given a variety of options that may include the following:

Money Market Fund option
Fixed Income option
High Yield option
Balanced Fund option
Equity Fund option
International Fund option

Contact the Program Administrator for a list of the actual options available.

**How frequently can I change my investment options?**

You may change your investment preferences daily.

**How can I keep track of my investment performance options?**

The Program Administrator will provide quarterly statements of your account.

**How do I apply for benefits?**

You should contact the Program Administrator to obtain information and forms. Benefits are not payable any earlier than permitted by the Program.

**Is there a Claims Procedure?**

You or an authorized representative may submit an application to the Program Administrator for payment of NQDCP benefits. If the Administrator for any reason denies or modifies a request for payment according to the terms of the Program, the Administrator will communicate its decision in writing and will:

- State the specific reason or reasons for the denial;
- Provide specific reference to pertinent Program provisions on which the denial is based;

7/6/07

9

- Provide a description of any additional material, data or information necessary for you or your representative to perfect your claim and an explanation of why such material or information is necessary; and
- Explain the Program's claim review procedure.

You or your representative may appeal a denial or modification of your request for benefits within 60 days following receipt of the denial by submitting a written request to the Program Administrator for review of the initial decision. Within 60 days following your request for review, the Program Administrator will render its final decision in writing, stating the specific reasons for the decision. If you or your representative are not satisfied with the Administrator's final decision, you or your representative can institute an action in court.

## Can this Program be terminated?

The Company reserves the right to amend, abridge or terminate the Program at any time. Upon terminating the Program all account balances will be paid in lump sum.

## May I review this Program with my lawyer, accountant or financial advisers?

Yes. The Company suggests you review the Program with your advisers.

This Program does not constitute a contract of employment between you and the Company. Your participation in the Plan does not give you any right to continue as an employee of the Company, or a right to any particular level of benefits. All employees remain subject to termination, layoff, or discipline as if the Plan had not been put into effect.

*For further information contact the following:*

*AMVESCAP Retirement Resources Group at 1-800-881-8520 Monday through Friday 9 a.m. to 5 p.m. ET. A Benefits Specialist will answer your call.*

**Company Information:**

NetBank, Inc.
c/o Taranda M. Frost
9710 Two Notch Road
Columbia, South Carolina 29223
Phone: 803-462-8136
Tax ID Number:  58-2224352

**Program Administrator:**

Program Administrator, NQDCP
AMVESCAP Retirement, Inc.
1201 Peachtree St.
400 Colony Square Suite 2200
Atlanta, Georgia 30361
800-881-8520

# EXHIBIT C

# NONQUALIFIED DEFERRED COMPENSATION PROGRAM

## INCLUDING §401(k) TRANSFER

### BASIC PROGRAM DOCUMENT

### SPONSORED BY

### AMVESCAP Retirement, Inc.

**COPYRIGHT**

This document is copyrighted under the laws of the United States. Its use, duplication or reproduction, including the use of electronic means, is prohibited by law without the express consent of the author.

## TABLE OF CONTENTS

PARAGRAPH                                                    PAGE

PREAMBLE                                                        1

### ARTICLE I
### DEFINITIONS

1.1    Administrator                                          2
1.2    Adoption Agreement                                    2
1.3    Beneficiary                                           2
1.4    Benefit Distribution Date                             2
1.5    Cash Or Deferred Plan                                 2
1.6    Cashout Amount                                        2
1.7    Change Of Control                                     3
1.8    Code                                                  3
1.9    Company                                               3
1.10   Compensation                                          3
1.11   Deferral Agreement                                    3
1.12   Deferrals                                             4
1.13   Effective Date                                        4
1.14   Employee                                              4
1.15   Entry Date                                            4
1.16   ERISA                                                 4
1.17   Nonqualified Deferred Compensation Program            4
1.18   Participant                                           4
1.19   Program                                               4
1.20   Program Year                                          4
1.21   Separation From Service                               4
1.22   Sponsor                                               4
1.23   Trust                                                 5
1.24   Trustee                                               5
1.25   Valuation Date                                        5

### ARTICLE II
### ELIGIBILITY REQUIREMENTS

2.1    Participation                                         6
2.2    Change In Classification Of Employment                6
2.3    Computation Period                                    6
2.4    Credited Service                                      6

## ARTICLE III
### DEFERRAL OF COMPENSATION

| | | |
|---|---|---|
| 3.1 | Notification | 7 |
| 3.2 | Deferral Agreement | 7 |
| 3.3 | Deferral Procedure | 7 |
| 3.4 | Amending Deferral Agreement | 7 |
| 3.5 | Termination Of Deferral Agreement | 8 |

## ARTICLE IV
### COMPANY CONTRIBUTIONS

| | | |
|---|---|---|
| 4.1 | Employee Deferrals | 9 |
| 4.2 | Company Contributions | 9 |
| 4.3 | Responsibility For Contributions | 9 |

## ARTICLE V
### PARTICIPANT ACCOUNTS AND REPORTS

| | | |
|---|---|---|
| 5.1 | Establishment Of Accounts | 10 |
| 5.2 | Account Maintenance | 10 |
| 5.3 | Valuation Of Assets | 10 |
| 5.4 | Allocation Methods | 10 |
| 5.5 | Valuation Date | 11 |
| 5.6 | Participant Statements | 11 |

## ARTICLE VI
### BENEFITS AND DISTRIBUTIONS

| | | |
|---|---|---|
| 6.1 | Benefits | 12 |
| 6.2 | Distributable Event | 12 |
| 6.3 | Cashout Amount | 12 |
| 6.4 | Form Of Payment | 12 |
| 6.5 | Payment Medium | 13 |
| 6.6 | Death Benefits | 13 |
| 6.7 | Beneficiary Designation | 13 |
| 6.8 | No Beneficiary | 13 |
| 6.9 | Claims Procedure | 13 |

## ARTICLE VII
### VESTING

| | | |
|---|---|---|
| 7.1 | Deferrals | 15 |
| 7.2 | Company Contributions | 15 |

| | | |
|---|---|---|
| 7.3 | Trust Assets | 15 |
| 7.4 | Credited Service | 15 |

## ARTICLE VIII
## PROGRAM ADMINISTRATION

| | | |
|---|---|---|
| 8.1 | Administrator | 16 |
| 8.2 | Duties Of Administrator | 16 |
| 8.3 | Company | 16 |
| 8.4 | Administrative Fees And Expenses | 17 |

## ARTICLE IX
## TRUST FUND

| | | |
|---|---|---|
| 9.1 | Trust | 18 |
| 9.2 | Unfunded Program | 18 |
| 9.3 | Investment Preferences | 18 |
| 9.4 | Assignment And Alienation | 18 |

## ARTICLE X
## AMENDMENT AND TERMINATION

| | | |
|---|---|---|
| 10.1 | Amendment | 19 |
| 10.2 | Termination | 19 |

## ARTICLE XI
## MISCELLANEOUS

| | | |
|---|---|---|
| 11.1 | Total Agreement | 20 |
| 11.2 | Employment Rights | 20 |
| 11.3 | Governing Law | 20 |

**PREAMBLE**

The Company, by executing the attached Adoption Agreement, hereby establishes an unfunded Nonqualified Deferred Compensation Program for a select group of management or highly compensated Employees.  Under Program terms, eligible management or highly compensated Employees will be permitted to defer a portion of their Compensation not yet earned until they attain their Benefit Distribution Date defined under paragraph 1.4 of the Program.  Participants shall have no right, either directly or indirectly, to anticipate, sell, assign or otherwise transfer any benefit accrued under the Program.  In addition, no Participant shall have any interest in any Company assets set aside as a source of funds to satisfy its benefit obligations under the Program, including the establishment of any trust under the terms of Revenue Procedure 92-64 or under the terms of any amendment thereof or successor thereto.  Participants shall have the status of general unsecured creditors of the employer and the Program constitutes an unsecured promise by the employer to make benefit payments in the future.

## ARTICLE I

## DEFINITIONS

1.1     *Administrator*  The individual or committee appointed by the Company to administer the Program as provided herein.  If no such appointment is made, the Compensation Committee ("Compensation Committee") of the Board Of Directors ("Board") of the Company shall serve as the Administrator.  If a Compensation Committee doesn't exist and no appointment is made by the Board, then the Board shall serve as the Administrator.  In no event shall any Participant who sits on the Compensation Committee or Board determine the amount of his or her benefits under this Program.

1.2     *Adoption Agreement*  The written instrument attached to this Basic Program Document by which the Company elects to establish a Nonqualified Deferred Compensation Program for eligible Employees.

1.3     *Beneficiary*  An individual, individuals or trust designated by the Participant to receive his or her benefit in the event of the Participant's death.  If more than one Beneficiary survives the Participant, payments shall be made equally to all such beneficiaries, unless otherwise provided in the Beneficiary form.  Nothing herein shall prevent the Participant from designating primary and secondary Beneficiaries.  Elections made by a Participant as to the timing and method of payment shall be binding on all Beneficiaries named by the Participant in his or her most recently dated Beneficiary form.

1.4     *Benefit Distribution Date*   The date specified in the Adoption Agreement on which a Participant's benefit is payable under the Program.  A Participant shall have no right to receive payment of his or her benefit until reaching his or her Benefit Distribution Date.

1.5     *Cash or Deferred Plan*  A qualified stock bonus or profit-sharing plan sponsored by the Company which includes a cash or deferred arrangement described at Code §401(k)(2).

1.6     *Cashout Amount*  An amount equal to the lesser of:

(a)     A Participant's Deferrals under this Program for a Program Year as adjusted for investment losses but not for investment gains, or

(b)     The maximum elective deferrals permitted under the Company's Cash or Deferred Plan less the Participant's elective deferrals actually made to the Cash or Deferred Plan with respect to the same Plan Year.  The maximum elective deferrals are determined

2

by the Company considering the maximum elective deferrals under Code §402(g), the maximum annual addition under Code §415 and after application of the antidiscrimination tests under Code §§401(k)(3) and 401(m)(2). The determinations under this paragraph shall be made by the Company not later than January 31 following the close of each Program Year.

1.7 *Change of Control* The purchase or other acquisition by any person, entity or group of persons within the meaning of Section 13(d) or 14(d) of the Securities Exchange Act of 1934 ("ACT"), (or any comparable successor provisions, of beneficial ownership within the meaning of Rule 13d-3 promulgated under the ACT) of 30 percent or more of either the outstanding shares of common stock or the combined voting power of the Company's then outstanding voting securities entitled to vote generally, or the approval by the stockholders of the Company of a reorganization, merger or consolidation, in each case, with respect to which persons who were stockholders of the Company immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than 50 percent of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated Company's then outstanding securities, or a liquidation or dissolution of the Company or of the sale of all or substantially all of the Company's assets.

1.8 *Code* The Internal Revenue Code of 1986, as amended.

1.9 *Company* The corporation or business entity which adopts this Program. Company shall also include any member of a controlled group of corporations as defined at Code §414(b), all commonly controlled trades or businesses as defined at Code §414(c) and any member of an affiliated service group as defined at Code §414(m) who elects to adopt this Program.

1.10 *Compensation* The total annual remuneration for employment received by an Employee from the Company and reported on his or her tax Form W-2. Compensation shall also include amounts deferred under this Program, under a Cafeteria Plan described at Code §125, under a Cash or Deferred Plan described at Code §401(k) and under any other Company plan qualified under Code §401(a) sponsored by the Company. Compensation shall only include remuneration earned while an individual is an Employee of the Company.

1.11 *Deferral Agreement* The written agreement between an eligible Employee and the Company to defer receipt by the Employee of Compensation not yet earned. Such agreement shall state the deferral amount or percentage of Compensation to be withheld from the Employee's Compensation and shall state the date on which the agreement is effective as provided at paragraph 3.1.

1.12 *Deferrals* That portion of an Employee's Compensation which is deferred under the terms of this Program. Such Compensation cannot yet have been earned by the Employee at the time of the Participant's election to defer.

1.13 *Effective Date* The date on which the Company's Nonqualified Deferred Compensation Program or any amendment thereto becomes effective.

1.14    *Employee* Any person employed by the Company as a common-law employee. Individuals who shall be treated as Employees for purposes of the Program shall be limited to those individuals who are within a select group of management or highly compensated Employees as determined by the Company in its sole discretion.

1.15    *Entry Date* The date on which an Employee commences participation in the Program as determined by the Company in the Adoption Agreement.

1.16    *ERISA* The Employee Retirement Income Security Act of 1974, as amended.

1.17    *Nonqualified Deferred Compensation Program* A Program, within the meaning of ERISA §201(2), the purpose of which is to permit a select group of management or highly compensated Employees to defer receipt of a portion of their Compensation to a future date.

1.18    *Participant* An Employee who is eligible to participate in the Program under Section 2.1 and who is eligible to defer a portion of his or her Compensation under this Program. An Employee or former Employee who has previously deferred a portion of his or her Compensation under the Program and who is still entitled to the payment of benefits under the Program shall also be considered a Participant.

1.19    *Program* The Nonqualified Deferred Compensation Program established by the Company under the terms of this document and the accompanying Adoption Agreement.

1.20    *Program Year* The 12 consecutive month period commencing on January 1 and ending on December 31. The first Program Year shall commence on January 1 of the calendar year in which the Program became effective.

1.21    *Separation From Service* The severance of an Employee's employment with the Company for any reason.

1.22    *Sponsor* AMVESCAP Retirement, Inc. or any member of a controlled group of corporations [as defined under Code §414(b) and (c) as modified by Code §415(h)] and any corporation which succeeds AMVESCAP Retirement, Inc. by merger or by acquisition of assets. The term Sponsor shall apply to the organization sponsoring this document and supporting administrative forms and not to a Company who may utilize this document and supporting administrative forms to establish a nonqualified deferred compensation program for a select group of management or highly compensated employees.

1.23    *Trust* The agreement, written in accordance with Revenue Procedure 92-64, as may be amended or superseded, between the Company and the Trustee under which any assets delivered by the Company to the Trustee will be held and managed. Any assets held under the terms of the Trust shall be the exclusive property of the Company and shall be subject to creditor claims of the Company. Participants shall have no right secured or unsecured to any assets held under the terms of the Trust.

1.24    *Trustee* The institution named by the Company in the Trust agreement and any corporation which succeeds the Trustee by merger or by acquisition of assets.

1.25   *Valuation Date*  The date on which Participant accounts are valued as elected by the Company in the Adoption Agreement.

## ARTICLE II

## ELIGIBILITY REQUIREMENTS

2.1 **_Participation_** Employees who meet the eligibility requirements set forth in the Adoption Agreement on the date the Program is adopted by the Company shall become Participants on the first Entry Date following the date of adoption. Employees who have not satisfied the eligibility requirements on the date of adoption shall become Participants on the Entry Date immediately following the date on which they meet the eligibility requirements. In the event an Employee who is not a member of the eligible class of Employees becomes a member of the eligible class, such Employee shall be eligible to participate on the Entry Date immediately following the date on which the Employee becomes a member of the eligible class.

2.2 **_Change In Classification Of Employment_** In the event a Participant becomes ineligible to participate because he or she is no longer a member of an eligible class of Employees, such Employee shall be eligible to participate on the Entry Date which follows his or her return to an eligible class of Employees.

2.3 **_Computation Period_** To determine Years of Service for eligibility purposes, the first 12-consecutive month period shall commence on the date on which an Employee first performs an hour of service for the Company and shall end on the anniversary thereof. The second and subsequent 12-consecutive month periods shall commence on the first day of the calendar year beginning within the first 12-consecutive month period of employment.

2.4 **_Credited Service_** All Years of Service with other members of a controlled group of corporations as defined in Code §414(b), trades or businesses under common control as defined in Code §414(c), or members of an affiliated service group as defined in Code §414(m), if applicable, shall be credited for purposes of determining an Employee's eligibility to participate in the Program and to determine his or her vested interest on termination of employment.

## ARTICLE III

### DEFERRAL OF COMPENSATION

3.1 **Notification**  The Program Administrator shall provide written notification to an Employee of his or her eligibility to participate in the Program and to elect to defer Compensation under this Program, and shall further provide such Employee with a Deferral Agreement.  The notification shall describe the requirements and limitations on the Employee's Deferrals, the election with respect to the Cashout Amount, the Program's distributable events and the optional forms of payment

3.2 **Deferral Agreement**  The Participant shall enter into a Deferral Agreement with the Company authorizing the deferral of all or part of the Participant's Compensation under the Program earned during the period in which the individual participates in the Program.  The Deferral Agreement shall also specify the commencement date and method of payment with respect to benefits attributable to Deferrals and Company contributions, if any, for the applicable Program Year and the Participant's election with respect to the Cashout Amount for the Program Year.  Except as provided at (a) and (b) below, the deferral election must be made not less than 30 days prior to the beginning of the Program Year for which the Compensation is payable.

    (a)    Employees who are eligible on the date the program is first effective may make an election to defer Compensation for services to be performed subsequent to the election no later than 30 days after the date the Program is effective for eligible Employees, and

    (b)    In the first year in which a Participant becomes eligible to participate in the Program, the newly eligible Participant may make an election to defer Compensation for services to be performed subsequent to the election no later than 30 days after the date the Employee becomes eligible.

In no event shall an Employee be permitted to defer Compensation for a pay period which has commenced prior to the date on which the Program is effective or the date on which a Deferral Agreement is signed by the Employee and accepted by the Program Administrator.

3.3 **Deferral Procedure**  Upon receipt of a properly completed and executed Deferral Agreement the Administrator shall notify the Company to commence to withhold that portion of the Participant's Compensation specified in the agreement. In no event will the Participant be permitted to defer more than the amount specified by the Company in the Adoption Agreement.

3.4 **Amending Deferral Agreement**  A Participant shall be permitted to increase or decrease his or her Deferrals by filing an amended Deferral Agreement with the Administrator.  Such amendment shall be effective on the first day of the first payroll period beginning in the next Program Year and must be made not less than 30 days prior to the beginning of the next Program Year.

3.5    *Termination Of Deferral Agreement*   The Company shall have the right to terminate an Employee's Deferral Agreement at any time upon written notice to the Employee. Such termination shall be effective on the first day of the next payroll period. In no event shall the Company have the right to terminate a Deferral Agreement with respect to Compensation already deferred. The Employee shall also have the right to terminate his or her Deferral Agreement upon written notice to the Administrator. Such termination shall be effective on the first day of the first payroll period in the next Program Year following the date on which the termination request is received by the Administrator. The Employee shall not be permitted to reinstate a new Deferral Agreement until the first day of the first payroll period beginning in the next Program Year following the date on which a new Deferral Agreement is received by the Administrator.

## ARTICLE IV

### COMPANY CONTRIBUTIONS

4.1  **Employee Deferrals**  The Company shall remit to the Trustee all amounts deferred by Participants under the terms of their respective Deferral Agreements.  Remittance by the Company shall be made as soon as administratively feasible following the date the funds were withheld from the Participant's Compensation but not later than 30 business days following the date withheld.  Any such Deferrals held and managed by the Trustee plus any investment earnings thereon shall remain the property of the Company and shall be subject to the claims of the Company's creditors.

4.2  **Company Contributions**  The Company may make matching or discretionary contributions under the terms of the Program.  The amount of the Company's discretionary and/or matching contribution and the formula(s) for allocating such contributions will be determined by the Company in the Adoption Agreement.  Any such contributions plus the earnings thereon shall be held and managed by the Trustee but shall remain the property of the Company and shall be subject to the claims of the Company's creditors.  Any Company contributions made under the Program shall be transmitted to the Trustee not less frequently than annually.

4.3  **Responsibility For Contributions**  The Company has sole responsibility for remitting Employee Deferrals and Company contributions to the Trustee for investment purposes.  The Trustee shall have no duty to determine whether the funds paid by the Company are the correct amount or that they have been transmitted in a timely manner.

**ARTICLE V**

**PARTICIPANT ACCOUNTS AND REPORTS**

5.1    *Establishment Of Accounts* The Administrator shall establish and maintain individual bookkeeping accounts on behalf of each Participant for purposes of determining each Participant's benefits under the Program. Separate sub-accounts shall be established for each Participant with respect to each Deferral Agreement for which a different form of payment has been elected.

5.2    *Account Maintenance* The Administrator shall add to each Participant's account amounts representing:

> (a) Employee Deferrals,
> (b) Company matching or discretionary contributions, if applicable, and
> (c) Investment earnings

The Administrator shall deduct from each Participant's account amounts representing:

> (d)    Distributions to the Participant or Beneficiary,
> (e)    Investment losses,
> and, if elected in the Adoption Agreement:
> (f)    Program administrative expenses, and
> (g)    Income taxes paid by the Company attributable to the Participant's benefits under the Program.

5.3    *Valuation Of Assets* As of each Valuation Date the Administrator shall determine the fair market value of all assets held under the terms of the Program. The valuation of securities traded on a national securities exchange shall be determined on the last business day of the valuation period in accordance with established or recognized industry standards for the valuation of traded securities. The value of non-traded securities shall be determined by reference to an appraisal prepared by an independent appraiser qualified to appraise the security or other property. Notwithstanding the first sentence of this paragraph, an appraisal of non-traded securities shall be prepared as of the last day of each Program Year and as required with respect to the determination of benefit payments.

5.4    *Allocation Methods* The Company's matching and discretionary contributions, if any, shall be allocated to eligible Participants in accordance with the allocation formula elected in the Adoption Agreement. If Deferrals and Company contributions, if any, are pooled for investment purposes, each Participant's account shall receive a pro-rata share of the investment earnings on all assets. Such pro-rata share shall be determined on the basis of the fair market value of each Participant's account at the beginning of the valuation period less distributions made during the valuation period. One half of the Contributions received systematically during the valuation period shall be added to the Participant's beginning account balance for allocation purposes. If contributions are invested in mutual funds or other pooled investment fund, the investment earnings allocable to each such Participant shall be determined by reference to the value of the applicable fund. If so elected in the Adoption Agreement, each Participant's Account

shall be charged for the relevant period with its pro-rata share of expenses and any taxes incurred by the Company attributable to the Program

5.5    ***Valuation Date***   Participant accounts shall be valued on the Valuation Dates provided that the value of non-traded securities shall be determined in accordance with paragraph 5.3.

5.6    ***Participant Statements***   The Administrator shall provide Participants with a statement of his or her account showing the additions to and deductions from such account during the period from the last statement date.  Such statement shall be provided to Participants as soon as administratively feasible following the end of each Program Year, or more frequently if elected by the Company.

**ARTICLE VI**

**BENEFITS AND DISTRIBUTIONS**

6.1     *Benefits*  A Participant's or Beneficiary's benefit payable under the Program shall be determined by reference to the value of the Participant's account balance at the time of a distributable event under the Program.  Such benefit shall be payable from the general assets of the Company which includes any assets held in the Trust.  In no event will a Participant's right to a benefit under this Program give such Participant a secured right or claim on any assets held in the Trust.

6.2     *Distributable Event*  Benefits other than Cashout Amounts shall be payable within 30 days following the Benefit Distribution Date coincident with or first following the earlier of the date on which:
        (a)     The Participant terminates employment with the Company,
        (b)     The Participant dies,
        (c)     The Company undergoes a Change In Control,
        (d)     As otherwise provided in the Adoption Agreement,
        (e)     Termination of the Program under paragraph 10.2 hereof.
No Participant shall have any right to receive payment of his or her benefit under the Program prior to the Benefit Distribution Date.

6.3     *Cashout Amount*  A Participant's Cashout Amount shall be distributed to the Participant, if so elected by the Participant in his or her Deferral Agreement, within $2^{1}/_{2}$ months following the close of the Program Year to which the cashout relates.  The Company matching contribution attributable to the Participant's Cashout Amount shall be administered as provided by the Company in the Adoption Agreement.  If the Participant elects to transfer the Cashout Amount to the Company's Cash or Deferred Plan, such transfer shall be made within $2^{1}/_{2}$ months following the close of the Plan Year.  If the transfer election is made, the Company shall also transfer any matching contribution attributable to the Deferral made under this Program to the Cash or Deferred Plan provided that the matching contribution so transferred does not exceed the match the Participant would have received if the Deferral had been made under the terms of the Cash or Deferred Plan.  The trustee of the Cash or Deferred Plan shall be advised by the Administrator that the Participant's Deferrals and Company matching contribution, if any, are to be credited to the Participant's account in the Cash or Deferred Plan for the same Plan Year as such amounts were received or receivable under this Program.

6.4     *Form Of Payment*   A Participant's Cashout Amount shall be paid as a lump sum.  Other benefits shall be paid in the form of a lump sum or installments.  Pursuant to paragraph 3.1, any election of a form of payment must be made by the Participant prior to the period of service for which the Deferral is made.  A different form of payment may be elected with respect to each separate deferral election made by the Participant.

6.5     *Payment Medium*  A Participant's Cashout Amount shall be distributed to the Participant or transferred to the Cash or Deferred Plan as the case may be in the form of cash only.  The Company may elect to pay the Participant's other benefits in the form

of cash, securities or any other property acceptable to the Participant and to the Company.

6.6 **Death Benefits**  Any benefit to which a deceased Participant is entitled to receive under the Program shall be paid to such Participant's Beneficiary.  Such death benefit shall be paid as a lump sum unless the Participant was receiving payment of his or her benefit in installments at the time of death.  In such event, the Participant's Beneficiary shall continue to receive installment payments in the same manner as the Participant.

6.7 **Beneficiary Designation**  A Participant shall have the right to designate a Beneficiary and to amend or revoke such designation at any time in writing.  Such designation, amendment or revocation shall be effective upon receipt by the Administrator.  A Participant may not, however, change his or her Beneficiary (during the life of such Beneficiary) after payments have commenced under an installment payment option where the payment period is determined by reference to the life expectancy of the Participant and his or her Beneficiary.

6.8 **No Beneficiary**  If no beneficiary designation is made, or if the beneficiary designation is held invalid, or if no Beneficiary survives the Participant and benefits remain payable following the Participant's death, the Administrator shall direct that payment of benefits be made to the person or persons in the first category in which there is a survivor.  The categories of successor Beneficiaries, in order, are as follows:

    (a)    Participant's spouse;
    (b)    Participant's descendants, per stirpes (eligible descendants shall be determined by the intestacy laws of the state in which the decedent is domiciled);
    (c)    Participant's parents;
    (d)    Participant's brothers and sisters (including step brothers and step sisters); and
    (e)    Participant's estate.

6.9 **Claims Procedure**  A Participant or authorized representative of a Participant may submit to the Administrator questions regarding Program Benefits or a claim for the payment of benefits.  Such question or claim may be submitted at any time.  However, benefit payments shall not be payable earlier than permitted by the Program.  The Administrator shall accept, reject, or modify such request and shall send written notification to the Participant setting forth the response of the Administrator and in the case of a denial or modification the Administrator shall:

    (a)    state the specific reason or reasons for the denial,

    (b)    provide specific reference to pertinent Program provisions on which the denial is based,

    (c)    provide a description of any additional material, data or information necessary for the Participant or his representative to perfect the claim and an explanation of why such material or information is necessary, and

(d)    explain the Program's claim review procedure.

In the event the request is rejected or modified, the Participant or his representative may appeal within 60 days following receipt by the Participant or representative of such rejection or modification, by submitting a written request for review by the administrator of its initial decision.  Within 60 days following such request for review, the Administrator shall render its final decision in writing to the Participant or representative stating specific reasons for such decision.  If the Participant or representative is not satisfied with the Administrator's final decision, the Participant or representative can institute an action in a court of competent jurisdiction.

**ARTICLE VII**

**VESTING**

7.1   *Deferrals*   Benefits attributable to Compensation deferred under the terms of this Program shall be nonforfeitable. However, such benefits shall not be payable to or for the benefit of a Participant until there is a distributable event under the Program.

7.2   *Company Contributions*   Benefits attributable to Company discretionary and matching contributions shall become nonforfeitable upon the earlier of the Participant completing the Service requirement in the Adoption Agreement or upon reaching a distributable event other than termination of employment for reasons other than retirement, under the Program. In the event the Participant terminates employment with the Company prior to completing the Service requirement in the Adoption Agreement or prior to reaching a distributable event other than termination of employment for reasons other than retirement, benefits attributable to Company discretionary and matching contributions shall vest in accordance with the schedule elected in the Adoption Agreement.

7.3   *Trust Assets*   Regardless of a Participant's vested status, no Participant shall have any vested interest in or claim on any assets held under the Trust either before or after the Participant attains his or her Benefit Distribution Date. A Participant's vested interest in benefits payable under the Program, not the Trust, shall be determined in accordance with paragraph 7.1, 7.2 and the election made by the Company in the Adoption Agreement. A Participant's option to state an investment preference under paragraph 9.3 hereof shall not give a Participant or Beneficiary any ownership right or interest in any asset held in the Trust. Any rights a Participant has with respect to benefits shall be determined by the Program.

7.4   *Credited Service*   For purposes of vesting, Credited Service shall include all Credited Service as provided at paragraph 2.4 herein.

**ARTICLE VIII**

**PROGRAM ADMINISTRATION**

8.1    *Administrator*  The Program shall be administered by the individual or committee selected by the Company.  If no Administrator is named by the Company or the named Administrator has resigned or otherwise cannot perform the administrative duties under the Program, the Compensation Committee of the Board Of Directors of the Company shall serve as Administrator.  If no Compensation Committee exists, then the Board of Directors of the Company shall serve as the Administrator.  However, in no event shall any Participant who sits on the Compensation Committee or Board determine the amount of his or her benefit under the Program.  The Administrator shall serve at the pleasure of the Company who shall have the right to remove the Administrator at any time upon 30 days written notice.  The Administrator shall have the right to resign upon 30 days written notice to the Company.

8.2    *Duties Of Administrator*  The Administrator shall be responsible to perform all administrative functions required under the Program.  These duties include but are not limited to:

    (a)    Communicating with Participants in connection with their rights and benefits under the Program.

    (b)    Reviewing investment preferences received from Participants.

    (c)    Arranging for the payment of taxes (including income tax withholding), expenses and benefit payments to Participants under the Program.

    (d)    Filing any returns and reports due with respect to the Program.

    (e)    Interpreting and construing Program provisions and settling claims and domestic relations orders in connection with Program benefits.

    (f)    Serving as the Program's designated representative for the service of advises, reports, claims or legal process.

    (g)    Employing any agents such as accountants, auditors, attorneys, actuaries or any other professionals it deems necessary in the performance of any of its duties.

8.3    *Company*  The Company has sole responsibility for the adoption and maintenance of the Program.  The Company through its Board shall have the power and authority to appoint the Program's Administrator, Trustee and any other professionals as may be required for the administration of the Program or the Trust.  The Company shall also have the right to remove any individual or party appointed to perform administrative, investment, fiduciary or other functions under the Program.  The Company may delegate any of its powers to the Administrator, a Board Member or any committee of the Board.

8.4    *Administrative Fees And Expenses*  All fees for investment and administrative services and all reasonable costs, charges and expenses incurred by the Administrator or the Trustee in connection with the administration of the Program or the Trust shall be paid by the Company.  If such fees, costs, charges and/or expenses are not paid by the Company within a reasonable period of time from the date on which the Company is billed for such fees, costs, charges and/or expenses, the Trustee shall be specifically authorized to pay the bill from Trust assets.  If the Trust has insufficient liquid assets to cover the amount due, the Trustee shall have the right to liquidate assets held in the Trust to raise cash to pay any amount due.  Notwithstanding the foregoing, no compensation other than reimbursement for expenses shall be paid to an Administrator who is an Employee of the Company.

## ARTICLE IX

### TRUST FUND

9.1 **Trust** Coincident with the establishment of the Program, the Company shall establish a Trust for the purpose of accumulating assets which may, but need not be used, by the Company to satisfy some or all of its financial obligations to provide benefits to Participants under this Program. All assets held in the Trust shall remain the exclusive property of the Company and shall be available to pay creditor claims of the Company in the event of bankruptcy. The assets held in Trust shall be administered in accordance with the terms of the separate trust agreement between the Trustee and the Company.

9.2 **Unfunded Program** In no event will the assets accumulated by the Company in the Trust be construed as creating a funded Program under the applicable provisions of ERISA, or under the Code, or under the provisions of any other applicable statute or regulation. In this connection, any funds set aside by the Company in trust shall be administered in accordance with the terms of the Trust.

9.3 **Investment Preference** If permitted by the Company in the Adoption Agreement, Participants shall have the opportunity to indicate an investment preference for the investment of any Deferrals and Company contributions, if any, made under the terms of the Program. A Participant's investment preference shall be communicated to the Administrator by completion and delivery to the Administrator of an Investment Preference Form. The Administrator shall review the form and may in its sole discretion implement a program reflecting the Participant's investment preferences. Participants shall indicate their initial investment preferences by filing an investment preference form with the Administrator prior to the date on which Deferrals commence under the terms of the Participant's Deferral Agreement. Participants shall have the opportunity to change their investment preferences with respect to new Deferrals and/or Company contributions or with respect to existing balances upon notice to the Administrator as provided in the Adoption Agreement.

9.4 **Assignment And Alienation** No Participant or Beneficiary of a deceased Participant shall have the right to anticipate, assign, transfer, sell, mortgage, pledge or hypothecate any benefit under this Program. The Administrator shall not recognize any attempt by a third party to attach, garnish or levy upon any benefit under the Program except as provided by law or under the terms of a domestic relations order as described at Code §414(p).

18

## ARTICLE X

### AMENDMENT AND TERMINATION

10.1   *Amendment*   The Company may at any time amend this Program without the consent of any Participant or Beneficiary hereunder provided that any amendment shall become effective on the first day of the Program Year following the date on which the amendment is adopted by the Company and that Participants and Beneficiaries be notified of such amendment not less than 30 days prior to the effective date thereof. The notice shall include an explanation of the amendment and its effects on the Participant's rights and benefits under the Program.  No amendment shall deprive a Participant or Beneficiary of any of the benefits which he or she has accrued under the Program.

10.2   *Termination*   Although the Company has established this Program with a bona fide intention and expectation to maintain the Program indefinitely, the Company may terminate or discontinue the Program in whole or in part on the earlier of the date on which there is a Change of Control or as of the first business day in the Program Year following the date on which the Company elects to terminate.  Upon Program termination, no further Deferrals or Company contributions shall be made except that the Company shall be responsible to pay any benefit attributable to Deferrals and Company contributions accrued as of the day preceding the effective date of termination plus investment earnings and less investment losses, taxes and expenses chargeable to the Participant's account up to the Benefit Distribution Date.  The Administrator shall make distribution of the Participant's benefit as of the next Benefit Distribution Date.

**ARTICLE XI**

**MISCELLANEOUS**

11.1   *Total Agreement*  This Program and the executed Adoption Agreement, Deferral Agreement, Beneficiary Designation and other administration forms shall constitute the total agreement or contract between the Company and the Participant regarding the Program. No oral statement regarding the Program may be relied upon by the Participant.

11.2   *Employment Rights*  Neither the establishment of this Program nor any modification thereof, nor the creation of any Trust or account, nor the payment of any benefits, shall be construed as giving a Participant or other person a right to employment with the Company or any other legal or equitable right against the Company except as provided in the Program. In no event shall the terms of employment of any Employee be modified or in any way be affected by the Program.

11.3   *Governing Law*  Construction, validity and administration of this Program including the accompanying Adoption Agreement and the Trust shall be governed by applicable Federal law and applicable state law in which the principal office of the Company is located.

20

# EXHIBIT D

### NONQUALIFIED DEFERRED COMPENSATION PROGRAM

### INCLUDING §401(k) TRANSFER

### ADOPTION AGREEMENT

The Company named below hereby establishes a Nonqualified Deferred Compensation Program for eligible Employees as provided in this Adoption Agreement and the Basic Program Document.

> **Note:** This document contains a feature allowing Participants to elect to have their Deferrals and Company matching contributions cashed out or transferred into the Company's Cash or Deferred Plan annually at the end of each calendar year. In this connection, the plan year for the Cash or Deferred Plan must be the calendar year or this document may not be used.

I     **Company Information**

    (a)     Name and Address:

        NETBANK, INC.
        C/O: Human Resources
        9710 Two Notch Road
        Columbia, SC 29223

    (b)     Telephone Number:          (803) - 462-8277

    (c)     Tax ID Number:              58-2224362

    (d)     Program Name:               NETBANK, INC. NONQUALIFIED
                                        DEFERRED COMPENSATION PLAN

II     **Definitions**

    (a)     Benefit Distribution Date:

        ○     First day of the Program Year following a Distributable Event.

        ▨     30 days (not more than 30) following a Distributable Event.

    (b)     Distributable Event:

        The following Distributable Events are in addition to those listed at paragraph 6.2 of the Basic Program Document.

        ○     Upon completion of ____ Years of Service determined with reference to the Employee's date of hire.

        ●     Other as follows: Age 55 and 7 years of service

1

(c)   Effective Date:

New Program:   The Program shall be effective as of <u>01/01/2003</u>.

Amended Program: The amended provisions of the Program shall be effective as of January 1, _____.

(d)   Entry Date:

O   The Effective Date of the Program.  This option applies only to those Employees who satisfy the eligibility requirements of Article II of the Basic Program Document on the Effective Date of the Program. If this option is chosen, the period of service upon which deferrals are based shall commence with the first payroll period subsequent to the deferral election and the Effective Date of the Program.

☒   First day of the month following the date on which the Employee satisfies the Program's eligibility requirements.

O   First day of the calendar quarter following the date on  which the Employee satisfies the Program's eligibility requirements.

(e)   Valuation Date (select one):

☒ Daily

O As of the last day of each Month

O As of the last day of each calendar Quarter

O As of June 30 and December 31

O December 31

III   Eligibility Requirements (select one)

(a)   Age, Service and Compensation:

O   An Employee shall be eligible to participate upon attaining age ___ and having completed ___ Years of Service with the Company provided that the Employee's anticipated annualized Compensation for the current Program Year is greater than $_____.

(b)   Nomination By Benefits Committee:

☒   The Benefits Committee has nominated the following classes of employees to be eligible to participate in the plan.

2

IV    **Employee Deferrals**

    (a)    Percentage of Compensation (select one or more):

        ☒    **Class I:** Senior officer or Senior Vice President and Above
            Up to <u>25%</u> of a Participant's total Compensation.

        ☒    **Class II:** All NetBank, Inc. associates who annual income is in excess of
            the qualified plan limit for deferrals into a 401(k) Plan.
            Up to <u>15%</u> of a Participant's Compensation in excess of the limitation on
            Compensation permitted under Code §401(a)(17), as indexed.

        O    A Participant's deferrals shall be limited to a maximum of
            $_____ for each Program Year.

    (b)    Dollar Amount:

        O    A dollar amount specified by a Participant  from a minimum of
            $_____ to a maximum of $_____ with respect to each Program
            Year.

V    **Company Match**

> Note: The matching contribution provisions of this Program must be the same or more liberal  than  those contained in the Cash or Deferred Plan to coordinate with the cashout/transfer  provisions of this Program.

    (a)    The Company's matching contribution shall be determined in accordance with
        one or more of the following methods:

        O    The Company shall contribute and allocate to each eligible Participant
            ____% of such Participant's Deferrals.

        O    The Company shall contribute and allocate to each eligible
            Participant ____% of the first ____% of such Participant's Deferrals,
            plus ____% of the next ____% of such Participant's Deferrals, plus ____%
            of the next ____% of such Participant's Deferrals.

        O    An amount determined in the discretion of the Company.  Such matching
            contribution shall be allocated to eligible Participants in proportion to their
            Deferrals for the Program Year.

    (b)    Limitations (select one or more):

        O    The matching contribution shall not exceed $_____ for any Participant.

        O    The Company shall not match any Deferral in excess of ____% of the
            Participant's Compensation.

o    The Company's matching contribution shall be payable from its net profit for the applicable Program Year.

4

    (c)    Eligibility For Match (select one or more):

         O    All Participants who have made deferrals under this Program for the Program Year.

         O    Participants employed on the last day of a Program Year for which a matching contribution is made.

    (d)    Cashout Amount (select one):

If a Participant elects to cash out his or her Deferrals for a Program Year, the Administrator shall take the following action with respect to any Company matching contribution attributable to such Deferral:

         O    The Company matching contribution shall be distributed to the Participant along with the Deferral.

         O    The Company matching contribution shall be retained in the Program as part of the Participant's account and shall be administered as provided by the Program.

VI    **Company Discretionary**

    (a)    Amount (select one or more):

         O    An amount determined in the discretion of the Company.

         O    An amount determined by the following formula:

    (b)    Allocation Formula (select one):

         O    Contributions are allocated in proportion to each eligible Participant's Compensation.

         O    Other as follows:

    (c)    Eligibility For Allocation (select one or more):

         O    All Participants employed at any time during a Program Year for which a contribution is made.

         O    Participants employed on the last day of a Program Year for which a contribution is made.

VII     **Vesting**

Participants shall always have a fully vested and nonforfeitable right to benefits attributable to Deferrals made under the Program.  Participants shall acquire a vested interest in benefits attributable to Company discretionary and matching contributions as follows:

O       Participants shall be fully vested in O Company O Discretionary and  O Matching contributions.

O       A Participant's vested benefit shall be determined from the following schedule:

|  | Percentage Vested | |
|---|---|---|
| Credited Service | Discretionary | Matching |
| Less than one year | _____% | _____% |
| One year | _____% | _____% |
| Two years | _____% | _____% |
| Three years | _____% | _____% |
| Four years | _____% | _____% |
| Five years . | _____% | _____% |
| Six years | _____% | _____% |
| Seven or more years | _____% | _____% |

VIII    **Participant Accounts**

Each Participant Account shall be reduced by its pro rata share for the relevant period, of:

O       Program administrative expenses .

O       Income taxes paid by the Company attributable to the Program.

IX      **Investment Preference**

Participants ☒ shall O shall not be permitted to indicate investment preferences for their ☒ Deferrals and O Company contributions.  If preferences are permitted, Participants shall be authorized to submit a nonbinding request to change an existing investment preference ☒ daily O  monthly or O quarterly.

6

X    **Form Of Payment (select one or more)**

☒        Lump sum.

☒        Installment payments. The payment period may not exceed the life expectancy of the Participant and his or her Beneficiary (provided that the Beneficiary is an individual). For retirees only. Retire is defined as a participant who is age 55 and has 7 years of service.

               ○    monthly installment payments over a period of _____ years.

               ○    quarterly installment payments over a period of _____ years.

               ☒    annual installment payments over a period of <u>10</u> years.

XI    **Signature**

This Adoption Agreement and Basic Program Document were adopted

by the Company the <u>5th</u> day of November.. .

Signed for the Company by: <u>Thomas R. McCenis, Jr.</u>

Title of Individual: <u>Senior Officer-Manager, Compensation & Benefits</u>

Signature: _____ *Thomas R. McConn...* _____

7

# EXHIBIT E

# ↶NetBank, Inc.

NASDAQ:NTBK

1015 Windward Ridge Parkway
Alpharetta, GA 30005
Main 770/343-6006
www.netbankinc.com

August 23, 2007

Mr. Jeffrey Hale
Vice President, Client Services
Merrill Lynch
Atlanta, Georgia

     Re: NetBank, Inc. Nonqualified Deferred Compensation Program

Dear Mr. Hale:

     This letter is written as confirmation that, as Chief Executive Officer of NetBank, Inc. (the "Company"), I am fully aware of my responsibility under Section 3(b)(1) of the Irrevocable Trust Agreement dated January 15, 2003 (the "Trust Agreement") to inform you, as Trustee, in writing of the Company's Insolvency (as defined in the Trust Agreement).

     This letter confirms that the Company has paid its debts as they have become due and the Company is not subject to any proceeding by or against it under the United States Bankruptcy Code (the "Code"). If the Company were not able to pay its debts as they have become due or if the Company does become a debtor under the Code, either the Board of Directors or I will ensure that Merrill Lynch is so notified.

     I understand that Merrill has been holding up distributions for employees and former employees to whom payments should have been made. In some cases, those payments should have been made many months ago. While I am not certain of all the circumstances surrounding this, I trust that you will quickly ensure that this problem is rectified.

     I also want you to understand that I am sending this letter despite the fact that it is not required under the Trust Agreement. Do not take my willingness to send you this letter as any indication of any future willingness on my part to send you any communication that is not required to be sent under the terms of the Trust Agreement.

     Sincerely,

Steven F. Herbert
Chief Executive Officer